IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Chas Lamous Smith, ) | Civil Action No.:2:15-cv-02533-HMH-MGB |
| ) | |
| Petitioner, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| v. ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Bryan P. Stirling, *Director, SC* ) | |
| *Department of Corrections*; Cecilia ) | |
| Reynolds, *Warden, Lee Correctional* ) | |
| *Institution*; and State of South Carolina, ) | |
| ) | |
| Respondents. ) | |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondents' Motion for Summary Judgment. (Dkt. No. 16; *see also* Dkt. No. 15.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner, through counsel, brought the instant habeas action on June 24, 2015. (*See* Dkt. No. 1.) On October 14, 2015, Respondents filed a Motion for Summary Judgment. (Dkt. No. 16; *see also* Dkt. No. 15.) Petitioner filed a Response in Opposition to that motion. (*See* Dkt. No. 18.)

**PROCEDURAL HISTORY**

The Petitioner is currently confined within the South Carolina Department of Corrections ("SCDC"). In May of 2009, the Cherokee County Grand Jury indicted Petitioner on the following charges: (a) accessory before the fact to felony murder, (b) accessory before the fact to felony burglary first degree (violent), and (c) accessory before the fact to felony armed robbery. (Dkt. No. 15-1 at 3-8 of 87.) Petitioner was represented by Fletcher Smith, Esquire. (*See* Dkt. No. 15-1 at 9 of 87.) On January 15, 2010, Petitioner pled guilty to accessory before the fact to felony burglary in the first degree and accessory before the fact to armed robbery before the Honorable J. Mark Hayes, II. (*See* Dkt. No. 15-1 at 9-29 of 87.) Pursuant to plea negotiations, "[t]here was a recommendation of

1

a 25 year [sentencing] cap." (*Id.* at 12 of 87.) On January 15, 2010, Judge Hayes sentenced Petitioner to twenty years, concurrent, on each of the two convictions. (Dkt. No. 15-1 at 28 of 87.)

Petitioner did not file a direct appeal, but filed an application for post-conviction relief ("PCR") on January 14, 2011. (Dkt. No. 15-1 at 32-37 of 87.) The following questions and answers appeared in his PCR application:

> 10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
> (a) Ineffective assistance of counsel
>
> 11. State concisely and in the same order the facts which support each of the grounds set out in (10):
>
> (a) Failure to aid in the defendant's cooperation with the government; failure to file an appeal within 10 days; failure to adequately explore plea negotiations; failure to communicate with client; and other such issues that may be determined through the discovery process.

(Dkt. No. 15-1 at 33-34 of 87.)

On January 31, 2012, an evidentiary hearing was held before Judge Frank R. Addy. (Dkt. No. 15-1 at 42-78 of 87.) Petitioner was present and represented by Beattie B. Ashmore, Esquire. (Dkt. No. 15-1 at 42 of 87.) In an order dated April 27, 2012, Judge Addy granted Petitioner's request for a review of direct appeal issues pursuant to *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974),[1] and denied the remainder of the remainder of the application for post-conviction relief. (Dkt. No. 15-1 at 80-87 of 87.)

On August 20, 2012, Beattie Ashmore, Esquire, filed a Direct Appellate Brief Pursuant to *White v. State*. (Dkt. No. 15-5.) In this filing, Petitioner raised the following issues:

> I. The appellant's sentence should be vacated because it was vastly disparate to that of his co-defendant and the trial court failed to articulate its reasons for imposing the disparity.

---

[1] Pursuant to *White*, where "a PCR court finds that a defendant did not voluntarily waive appeal, he may petition the [South Carolina] Supreme Court to consider direct appeal issues." *Wilder v. McCabe*, Civ. A. No. 3:11-187-MBS-JRM, 2012 WL 831488, at *2 n.4 (D.S.C. Feb. 21, 2012), adopted at 2012 WL 831484 (Mar. 12, 2012).

> II. The appellant's sentence violates his Eighth Amendment right to be free of cruel and unusual punishment.

(Dkt. No. 15-5 at 5 of 14.) Also on August 20, 2012, Mr. Ashmore filed a petition for writ of certiorari, wherein he raised the following issues:

> I. Counsel was ineffective for failing to investigate the petitioner's initial verbal statement to law enforcement.
>
> II. The petitioner was prejudiced by counsel's failure to investigate petitioner's initial verbal statement to law enforcement when a co-defendant who made a similar statement was permitted to plead to a lesser crime with a shorter statutory maximum sentence.
>
> III. Counsel was ineffective for failing to present substantial mitigating evidence to the court at the petitioner's plea and sentencing hearing.
>
> IV. The petitioner was prejudiced by counsel's failure to present substantial mitigating evidence to the court at the petitioner's plea and sentencing hearing, which resulted in the petitioner's disparate sentence.
>
> V[]. The petitioner did not knowingly and voluntarily waive his right to a direct appeal, thus is entitled to a direct appeal pursuant to White v. State.

(Dkt. No. 15-4 at 2 of 12.)

On January 29, 2013, the Supreme Court of South Carolina transferred Petitioner's case to the South Carolina Court of Appeals. (Dkt. No. 15-8.) In an unpublished opinion filed June 30, 2014, the South Carolina Court of Appeals denied certiorari as to Petitioner's Questions One through Four, but granted certiorari as to Petitioner's Question Five and proceeded to a review of the direct appeal issues. (*See* Dkt. No. 15-9 at 2 of 2.) The South Carolina Court of Appeals concluded that because Petitioner did not object to his sentences at his plea hearing, the errors he attempted to assert were not preserved for review. (*Id.*) The lower court's decision was therefore affirmed, (Dkt. No. 15-9), and the matter was remitted to the lower court on July 17, 2014. (Dkt. No. 15-10.)

Petitioner then filed the instant habeas petition, wherein he raised the following grounds for review:

> **GROUND ONE**: Counsel was ineffective in failing to investigate the circumstances of Petitioner's verbal statement to law enforcement.
>
> **GROUND TWO**: Counsel was ineffective for failing to present important mitigating evidence at the plea and sentencing hearings.

(Dkt. No. 1 at 6-8 of 16; *see also* Dkt. No. 1-1.)

## **APPLICABLE LAW**

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id*. (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>    2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## **DISCUSSION**

As noted above, Respondents seek summary judgment in the instant case. (Dkt. No. 16; *see also* Dkt. No. 15.) For the reasons set forth herein, the undersigned recommends granting Respondents' motion.

### **A.    Ground One**

In Ground One, Petitioner asserts that counsel was ineffective in "failing to investigate the circumstances of Petitioner's verbal statement to law enforcement." (Dkt. No. 1.) Petitioner asserts that as a result of counsel's ineffectiveness, Petitioner "received a heavier sentence than he should have." (Dkt. No. 1-1 at 11.) Petitioner received a 20-year sentence "as a violent offender, while co-Defendant Deal received a fifteen year sentence as a non-violent offender." (*Id*.) Petitioner asserts that at his plea and sentencing hearing, "the State contended a significant consideration for Deal's sentence was the fact that Deal went to the police the day of the incident and confessed." (*Id*.) Petitioner states,

> The Assistant Solicitor emphasized this, arguing that Deal was the only one of the four co-defendants who gave an initial statement as to what had happened, and claiming that the State weighed that heavily in determining what Deal would be allowed to plead to. Exhibit 1, pp. 18-19.
>     The Petitioner's trial counsel failed to rebut this argument and failed to present important mitigating evidence to the court. First, because he had failed to

5

> properly investigate the Petitioner's initial verbal statement to law enforcement, which, like Deal's statement, was given on the same day of the incident, he was unable to tell the trial court that the Petitioner had also confessed, at least in part, within hours of the incident. Trial counsel did not even know that the Petitioner had made such a statement. Exhibit 3, pp. 25-26.

(Dkt. No. 1-1 at 11-12.) Petitioner asserts that counsel's "failures were critical omissions that prejudiced Petitioner because they led directly to the trial court's imposition of a twenty year sentence instead of a sentence more like the fifteen year sentence given to Deal." (*Id*. at 12.)

In addressing Petitioner's claims raised before the PCR court, that court noted Petitioner raised the following allegations of ineffective assistance of counsel in his application:

> a. Counsel failed to assist in the Applicant's cooperation with the government,
> b. Counsel failed to file an appeal within 10 days,
> c. Counsel failed to adequately explore plea negotiations,
> d. Counsel failed to communicate with client.

(Dkt. No. 15-1 at 81 of 87.) The PCR court summarized Petitioner's testimony as follows:

> The Applicant testified that he was involved in an armed robbery that resulted in the shooting and death of a victim, but he never went inside the home. Applicant acknowledged that he was the person in the car that provided directions to the home. Applicant testified that the robbery occurred on January 4th, but then on January 5th, he was picked up by police and gave a verbal statement. However, applicant testified that there was nothing in discovery regarding his verbal statement. Applicant acknowledged that he did not go directly to the police after the robbery and shooting occurred, but he did give a statement after he was arrested. Applicant also testified that because of the information he provided to police, they were able to find the shotgun used in the shooting. Applicant testified that he retained Counsel after he was arrested and gave the statement, but Counsel did get him out on bond. Applicant testified that he went over all the discovery materials with Counsel, but only met him once. Applicant testified that Counsel told him that he would receive a sentence of ten years. Applicant testified that he was the last of the four co-defendants to plead guilty and the shooter received a life sentence, another received a twenty-five year violent sentence, and the driver of the car received a sentence of fifteen years non-violent. Applicant also testified that he was under the impression that he was getting credit for the time he served while on GPS monitoring for the year and a half before he pled guilty.

(Dkt. No. 15-1 at 82-83 of 87.) The PCR court summarized counsel's testimony as follows:

> Counsel testified that he was retained to represent Applicant and obtained bond for Applicant, but then Applicant was returned to jail for violating his bond. Counsel testified that he actually met with Applicant and reviewed discovery materials with him several times because the initial plan was to proceed to trial. Counsel testified that the co-defendant that received the fifteen year non-violent sentence was the first to confess and notified the police as to all of the other participants in the armed robbery and shooting. Although Counsel did acknowledge the Applicant was the one who provided facts that led to the gun [sic]. Counsel testified that he was informed by the State that the Applicant made two statements, but the first was deemed to be not credible because of how inconsistent it was with the other co-defendant's statement and apparent facts of the case. Counsel testified that he did try to negotiate with the State, but they were not willing to offer anything more than they did.

(Dkt. No. 15-1 at 83 of 87.)

After addressing Petitioner's claim that counsel was ineffective for failing to file a direct appeal, and granting Petitioner a belated appeal, the PCR court addressed the remaining claims of ineffective assistance of counsel as follows:

> In Hill v. Lockhart, 474 U.S. 52 (1985), the United States Supreme Court held that the two-part standard adopted in Strickland v. Washington, supra, for evaluating claims of ineffective assistance of counsel applies, as well, to guilty plea challenges based on ineffective assistance of counsel. To meet the Court's "prejudice" requirement, a criminal defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. This Court finds that the Applicant was aware of and informed of the charges to which he was pleading guilty. This Court also finds that counsel is an experienced attorney who was prepared for, had thoroughly investigated the case, and effectively represented Applicant at his guilty plea. This Court also finds that Counsel explored and effectively negotiated with the State for a plea recommendation which was in his client's best interest. This Court finds that the Applicant has failed to meet his burden of proof as to this claim; therefore, this claim is denied and dismissed.

(Dkt. No. 15-1 at 84-85 of 87.)

As noted above, Petitioner contends that counsel was ineffective in "failing to investigate the circumstances of Petitioner's verbal statement to law enforcement." (Dkt. No. 1.) Petitioner asserts that "a significant consideration for Deal's sentence was the fact that Deal went to the police the day of the incident and confessed," and the solicitor "emphasized this, arguing that Deal was the only one of the four co-defendants who gave an initial statement as to what had happened, and claiming that

7

the State weighed that heavily in determining what Deal would be allowed to plead to." (Dkt. No. 1-1 at 11.) Petitioner asserts, however, that he also gave a verbal statement to police "on the same day of the incident" and "also confessed, at least in part, within hours of the incident." (*Id*. at 12.)

The undersigned recommends granting summary judgment to Respondents as to Ground One. Petitioner essentially asserts that because counsel did not present evidence of Petitioner's verbal statement, he received a harsher sentence than he would have received had counsel in fact presented this evidence. Petitioner asserts that, instead of the twenty-year violent sentence he received, he should have received a sentence more in line with co-defendant Deal's fifteen-year non-violent sentence. (*See* Dkt. No. 1-1 at 17-18.) Petitioner contends that the PCR court "applied the wrong law" in assessing his claim because his claim of ineffective assistance of counsel at sentencing does not fall under the purview of *Hill v. Lockhart*, 474 U.S. 52 (1985). (*See* Dkt. No. 1-1 at 1-2.) Petitioner asserts that the authority for his claims of ineffective assistance of counsel "were and are" *Strickland v. Washington*, 466 U.S. 668 (1984); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); and *Glover v. United States*, 531 U.S. 198 (2001). (*See* Dkt. No. 1-1 at 2.)

In *Lafler*, the United States Supreme Court addressed a claim of ineffective assistance of counsel where a "favorable plea offer was reported to the client but, on advice of counsel, was rejected." *Lafler*, 132 S. Ct. at 1383. After the plea offer in *Lafler* was rejected, the petitioner received a "full and fair trial before a jury," but he "received a sentence harsher than that offered in the rejected plea bargain." *Id*. The case came "to the Court with the concession that counsel's advice with respect to the plea offer fell below the standard of adequate assistance of counsel." *Id*. The Court addressed "how to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." *Id*. at 1384. The Court stated, *inter alia*,

> To establish *Strickland* prejudice a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

8

> would have been different. In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice. In *Hill* [*v. Lockhart*, 474 U.S. 52 (1985)], when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Court required the petitioner to show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."
>
> In contrast to *Hill*, here the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1384-85 (internal quotation marks and citations omitted).

The undersigned agrees that *Hill v. Lockhart* is not the governing standard for the claim raised in Ground One, as Petitioner is not challenging his guilty plea. *See Glover v. United States*, 531 U.S. 198 (2001) (applying *Strickland* to a claim of ineffective assistance of counsel in a noncapital sentencing proceeding and stating, *inter alia*, "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance." (citations omitted)); *see also Lafler*, 132 S. Ct. at 1386 ("Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" (quoting *Glover*, 531 U.S. at 203)); *Strickland*, 466 U.S. at 695 (1984) ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the

sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."); *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003) ("Where the petitioner challenges a death sentence, 'the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'" (quoting *Strickland*, 466 U.S. at 695)). However, the undersigned has reviewed the transcript of the Petitioner's PCR hearing as well as the PCR court's order, and is not clear to the undersigned that Petitioner raised the exact claim to the PCR court that he raises in the case *sub judice*.

In his application for PCR, Petitioner alleged counsel was ineffective in the following particulars: "Failure to aid in the defendant's cooperation with the government; failure to file an appeal within 10 days; failure to adequately explore plea negotiations; failure to communicate with client; and other such issues that may be determined through the discovery process." (Dkt. No. 15-1 at 34 of 87.) Petitioner did *not* contend in his application that counsel was ineffective in failing to investigate or, more specifically, failing to investigate his verbal statement.

At the PCR hearing, Petitioner testified that he gave a verbal statement after the police arrested him on a trespassing charge. (Dkt. No. 15-1 at 49 of 87.) Petitioner testified that his discovery material did not contain "anything in there that reflects that [he] gave an oral statement." (*Id*. at 50.) Petitioner testified that his attorney did not tell the judge that he was the one responsible for finding the murder weapon, nor did he tell the judge that Petitioner "came in and . . . g[a]ve a statement implicating [himself] and the others." (*Id*. at 54.) Counsel testified that he did not recall Petitioner telling him about a verbal statement. (*Id*. at 66.) Counsel stated he was aware that Petitioner had given two statements and that, as to the first statement, law enforcement "found his statement to be non-credible and that he was lying to law enforcement." (*Id*. at 68.)

The PCR court addressed various claims of ineffective assistance of counsel, but nowhere did the PCR Court address a claim that counsel was ineffective in failing to investigate the circumstances of Petitioner's verbal statement to law enforcement. Thus, while *Hill v. Lockhart* is not the correct precedent to apply to the claims Petitioner raises before this court, the undersigned cannot say the PCR Court applied the wrong law *to the claims the Petitioner actually raised* in that court.

Nevertheless, Petitioner *did* raise the claim set forth in Ground One to the South Carolina Court of Appeals in his petition for writ of certiorari, and it appears the South Carolina Court of Appeals decided that claim on the merits. (*See* Dkt. No. 15-4 at 2, 5-6 of 12; *see also* Dkt. No. 18-1.) Petitioner is not entitled to habeas relief unless the state court's adjudication of the claim was contrary to, or an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254.

The undersigned recommends concluding that Petitioner is not entitled to habeas relief on Ground One. While Petitioner contends that counsel was ineffective in failing to investigate a verbal statement, there is next to no information in the record about the contents of that verbal statement. Counsel had negotiated with the State to obtain a recommendation of a 25-year sentencing cap, and counsel argued for a fifteen-year sentence. (*See* Dkt. No. 15-1 at 12, 23-24 of 87.) Counsel asserted that Petitioner "at no time planned, executed, or had any intent to have that young man murdered." (*Id.* at 22.) Counsel argued, *inter alia*,

> What happened, Your Honor, is that on that night in question when [Petitioner] did give directions, they were going to buy something. And when they got there, before they got there, the guy named–the fellow who actually got the gun out of the house from the other fellow that you sentenced to 25 years and the other fellow to life, those fellows organized and planned to rob somebody. The fellow who was driving the car and this gentleman right here, Mr. Chas Smith, were kind of like sitting in the car and under threat, because when they got to the scene Mr. Chas Smith said "my sister is in there. I don't want you to go in there with that gun," but the fellow went in there with the gun anyway.

11

>    Now, Mr. Smith had no control over this man's actions. He was trying to stop a crime that was getting ready to go into progress. Lo and behold this idiot goes inside there and murders somebody inside the household, this fellow, and then the other fellow, Mandrain, who got the 15 years nonviolent, we can say that he was less culpable, but this man was less culpable in the same way.
>    So we are asking for a sentence, Your Honor, around the 15 year violence range, because Mandrain got a 15 year nonviolent. He will be out in substantially shorter period of time than say Mr. Chas Smith, who was 18 at the particular time that these so called offenses were committed.
>    We believe that the sentences against the man who pled guilty to manslaughter, and I think that was several weeks ago, first degree burglary, and armed robbery, that fellow got 25 years. This is a different situation. This is an accessory before the fact of burglary, which is justified from the facts, and accessory before the fact of armed robbery. And, therefore, we believe that a 15 year–a 15 year sentence would be appropriate under these circumstances, taking into [account] the fact that he has no prior criminal record, comes from a good family, was on his way to achieving some productive aspect in society, has great family support back here, and we are very deeply sorry.
>    I know of nobody in this courtroom would want to lose a son. And I think the family on Mr. Chas Smith's side would not have wanted Mr. Chas Smith to be have–to have had that same circumstance happen to him, but we believe that he is less culpable than the man who got life and the man who got 25 years, and he is as equally culpable as the man who got the 15 year nonviolent, but we are not asking for the nonviolent. We are asking for the 15 years, Your Honor.

(Dkt. No. 15-1 at 22-24 of 87.)

>    After Petitioner's sister spoke, the prosecutor stated,

>    With regard to Tomaine Deal, and I don't want to belabor any of these points, but with regard to his case where he got 15 years on an accessory after the fact, a significant consideration by the family and the State in that case was the fact that without Mr. Deal going to the police that day [sic]. He was the one who basically explained what had happened and started the–helped the law enforcement significantly in getting the people who were responsible brought to justice. He was the only one of the four that gave a statement initially as to what happened. All the others had to give separate statements after they were confronted with the facts, and the State weighed that heavily in his–in what he was allowed to plead to.

(Dkt. No. 15-1 at 26-27 of 87.) In response, Petitioner's counsel stated,

>    Your Honor, I have no dispute with my brother, the prosecution, but the fact is there were eyewitnesses there who could tag what happened out there that night. So they helped substantially themselves with the eyewitnesses were [sic].

> And also this gentleman was told by the police to give a statement and this might could help him, when he actually appeared before the court. **So he actually cooperated with the police as well. He gave a–he gave two statements**.
> I might add that we are not asking for the same thing. The other fellow got a nonviolent 15 years. This one is violent, most serious, which is a difference.

(Dkt. No. 15-1 at 27 of 87 (emphasis added).)

Thus, contrary to Petitioner's argument that counsel did not present evidence that Petitioner cooperated with law enforcement, counsel specifically argued that Petitioner "actually cooperated with the police as well." (Dkt. No. 15-1 at 27 of 87.) Additionally, Petitioner did not dispute the fact that he was *not* the first individual to cooperate with the police. At the PCR hearing, Petitioner admitted on cross-examination that he "didn't go to the police after the crime and . . . let them know that . . . someone had been killed by Mr. Byers." (Dkt. No. 15-1 at 59-60 of 87.) And while Petitioner asserted that he "was in the County" before Mr. Deal was (perhaps suggesting that Mr. Deal was not the first to alert police to the crime), Petitioner admitted that Mr. Deal is "how [police] determined that [Petitioner] w[as] . . . a suspect." (*Id*. at 60-61.) On these facts, the undersigned recommends concluding that Petitioner is not entitled to federal habeas relief on Ground One.

## B.     Ground Two

In Ground Two, Petitioner claims that counsel was "ineffective for failing to present important mitigating evidence at the plea and sentencing hearings." (Dkt. No. 1 at 8 of 16.) Specifically, Petitioner points to the following:

> [Counsel] failed to inform the trial court that: 1) by 8:30 PM on the day of the murder, the Petitioner had given the police a written statement naming Byars and Dawkins as guilty parties and specifically quoting Byars's admissions about planning to commit a robbery and then shooting someone. Exhibit 4. And third, trial counsel failed to tell the court that the Petitioner had told law enforcement where the gun used in the crime was, and that, as a result of the Petitioner's statement, the Sheriff's Office executed a search warrant for the property where the gun was and found the gun.

13

(Dkt. No. 1-1 at 12 of 21.) Petitioner asserts "[t]hese failures were critical omissions that prejudiced the Petitioner because they led directly to the trial court's imposition of a twenty year sentence instead of a sentence more like the fifteen year sentence given to Deal." (*Id*.)

Respondents contend this ground is procedurally defaulted. (*See* Dkt. No. 15 at 1, 16-18.) Respondents assert the claim is defaulted because while the claim "was arguably discussed at the PCR evidentiary hearing, it was not squarely raised in the PCR application and it was not specifically ruled upon by the PCR court." (*Id*. at 16.) Respondents assert the claim was not "raised and ruled upon by the PCR court," nor did Petitioner "present this claim to the South Carolina Supreme Court for review." (*Id*.)

On the other hand, Petitioner asserts that he fully exhausted his state court post-conviction remedies. (Dkt. No. 18 at 1.) Petitioner asserts the South Carolina Court of Appeals denied the petition for writ of certiorari "based on the merits of the post conviction claim," stating,

> We find evidence supports the PCR court's dismissal of Petitioner's claims of ineffective counsel, accordingly, we deny certiorari as to Petitioner's Questions One through Four.

(Dkt. No. 18 at 1; *see also* Dkt. No. 18-1.) Petitioner contends his claims "were fully reviewed by the State Appellate Court." (Dkt. No. 18 at 2.)

"Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008) (quoting *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000)). As the Fourth Circuit stated in *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004),

> [The] exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a

> state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (internal quotation marks and citation omitted). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"-which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id*. at 845, 847, 119 S.Ct. 1728. And this opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir.2000) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir.1997) (internal quotation marks omitted)). In other words, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir.1994) (citation and internal quotation marks omitted).

*Longworth*, 377 F.3d at 448.

Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). In the alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a miscarriage of justice, e.g., actual innocence, *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995), or abandonment by counsel. *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012).

In the case *sub judice*, Petitioner clearly raised Ground Two in his petition for writ of certiorari. (*See* Dkt. No. 15-4.) And there was certainly some testimony related to Ground Two at the PCR hearing. At the PCR hearing, Petitioner testified that he came forth and told police what happened. (Dkt. No. 15-1 at 52 of 87.) In addition, Petitioner testified that he "disclosed to the police the location of the murder weapon," and the police found the shotgun based solely on information provided by Petitioner. (*Id*.) When the solicitor indicated that Mr. Deal got a fifteen-year non-violent sentence because "he came forth and told what happened," Petitioner testified

15

that his attorney did not have a response to that and did not tell the judge that Petitioner was "the one responsible for finding the murder weapon." (Dkt. No. 15-1 at 54 of 87.) Petitioner complains that his attorney never told the police or the D.A. "the part that [Petitioner] played as far as . . . giving the D.A. information on, you know, not–not just [himself] but [his] codefendants as well." (*Id*. at 57 of 87.) Petitioner stated, "I–I came forth and told too." (*Id*.)

Even if the state court could have declined to hear Ground Two on the merits, it did not appear to do so. As Petitioner notes, the South Carolina Court of Appeals denied certiorari as to Ground Two, finding that "evidence supports the PCR court's dismissal of Petitioner's claims of ineffective assistance of counsel." (Dkt. No. 18-1 at 2.) Based on the foregoing, the undersigned recommends concluding that Ground Two is not procedurally defaulted. *See Harris v. Reed*, 489 U.S. 255, 262-63 (1989) ("[A] federal claimant's procedural default precludes federal habeas review . . . only if the last state court rendering a judgment in the case rests its judgment on the procedural default." (citations omitted)); *see also Thomas v. Davis*, 192 F.3d 445, 453 (4th Cir. 1999) ("A state rule of procedure cannot command default of a claim asserted by a federal habeas petitioner unless the last state court to consider the claim actually relies on the rule to reject it." (citations omitted)).

As noted above, Petitioner is not entitled to habeas relief on Ground Two unless the state court's adjudication of the claim was contrary to, or an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254. The undersigned recommends concluding that Petitioner is not entitled to relief as to Ground Two. As detailed above, contrary to Petitioner's arguments that counsel did not alert the sentencing judge that Petitioner had also cooperated, such a contention is contradicted by the record. Counsel specifically argued that Petitioner "actually cooperated with the police as well." (Dkt. No. 15-1 at 27 of 87.)

It is undisputed that counsel did not inform the sentencing judge that Petitioner assisted police in locating the gun. But the state court's rejection of this claim of ineffective assistance of counsel was not unreasonable. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."). Counsel argued that Petitioner was "trying to stop a crime that was getting ready to go into progress." (Dkt. No. 15-1 at 23 of 87.) He argued several times that Petitioner should be sentenced to fifteen years, stating, *inter alia*, "[W]e believe [Petitioner] is less culpable than the man who got life and the man who got 25 years, and he is equally culpable as the man who got the 15 year[s] nonviolent. . . ." (Dkt. No. 15-1 at 24 of 87; *see id.* at 23 of 87.) When the solicitor pointed out that a "significant consideration" with respect to Mr. Deal was Mr. Deal went "to the police that day" and was "the one who basically explained what had happened and started the–helped the law enforcement significantly in getting the people who were responsible brought to justice," counsel responded that Petitioner "cooperated with police as well" and "gave two statements." (Dkt. No. 15-1 at 26-27 of 87.) Furthermore, while Petitioner asserted at the PCR hearing that he "was in the County" before Mr. Deal was (perhaps suggesting that Mr. Deal was not the first of the co-defendants to speak to police), Petitioner admitted that Mr. Deal is "how [police] determined that [Petitioner] w[as] . . . a suspect." (Dkt. No. 15-1 at 59-61 of 87.) In light of counsel's arguments to the sentencing judge, a fairminded jurist could certainly conclude that counsel's failure to disclose that Petitioner assisted police in finding the gun did not prejudice Petitioner. The undersigned therefore recommends granting summary judgment to Respondents as to Ground Two.

## **CONCLUSION**

It is RECOMMENDED, for the foregoing reasons, that Respondents' Motion for Summary Judgment (Dkt. No. 16) be GRANTED and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[2]

IT IS SO RECOMMENDED.

May 27, 2016
Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**The parties' attention is directed to the important notice on the next page.**

---

[2]Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).